IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES LAVAUGHN YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:16-CV-02634 |
| | § | |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Plaintiff's Motion For Summary Judgment (Document No. 11), Defendant's Cross-Motion For Summary Judgment (Document No. 12), Memorandum In Support of Defendant's Cross-Motion For Summary Judgment (Document No. 13), and Defendant's Reply to Plaintiff's Cross-Motion For Summary Judgment (Document No. 14). Having considered the motions for summary judgment, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Cross-Motion for Summary Judgment is DENIED, and the decision of the Commissioner of the Social Security Administration is REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

---

[1] On November 29, 2016, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 4.

I.   **Introduction**

Plaintiff James Lavaughn Young ("Young") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. Young argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision because the ALJ (1) failed to consider Young's blurry vision as a severe impairment and (2) failed to properly apply the controlling law in assessing Residual Functioning Capacity (RFC). The Commissioner, in contrast, contends that (1) there is substantial evidence in the record to support the ALJ's decision; (2) the decision comports with applicable law; and (3) that the decision should therefore be affirmed.

II.  **Procedural History**

Young applied for disability insurance benefits ("DIB") on January 7, 2014, claiming that he had been unable to work since January 7, 2014 as a result of sickle cell disease, problems walking, problems sitting, and problems with vision. (Tr. 224). The Social Security Administration denied his application at the initial and reconsideration stages. Subsequently, Young requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Susan J. Soddy, held a hearing on September 17, 2015, at which Young's claims were considered *de novo*. (Tr. 32-61). Thereafter, on March 16, 2016, the ALJ issued the decision finding Young not disabled. (Tr. 10-23).

Young sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following

circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On June 25, 2016, the Appeals Council found no basis for review. (Tr. 1-4). The ALJ's decision thus became final.

Young filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III. Standard of Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*,

864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court defines "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d. 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

4

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Legget v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, at step one, the ALJ found that Young was not engaged in substantial gainful activity since January 7, 2014. (Tr. 15). At step two, the ALJ determined that Young has the following severe impairments: degenerative disc disease of the lumbar spine, sickle cell anemia, hearing loss with vertigo and deep vein thrombosis. (Tr. 15). The ALJ found at step three that Young does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1. (Tr. 18). Prior to the consideration of step four, the ALJ determined that Young had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot work in environments with more than moderate noise levels as defined by the Dictionary of Occupational Titles. He cannot work around hazards such as unprotected heights, open water, or flame and/or moving/dangerous machinery." (Tr. 19-20). While conceding that Young's impairments are severe enough to have more than a minimal impact on his daily living, the ALJ concluded that his impairments are not totally disabling and do not preclude Young from participating in all substantial gainful activity. (Tr. 22). Using that residual functional capacity assessment, the ALJ found at step four that Young, despite his impairments and limitations, could perform his past relevant work as a database administrator. (Tr. 23). In this appeal, the Court must determine whether substantial evidence supports the step four finding, and whether the ALJ used the correct legal standards in arriving at that conclusion.

In determining whether substantial evidence supports the ALJ's decision, the court generally weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren*, 925 F.2d at 126.

## V.   Discussion

### A.   Objective Medical Facts

The record shows that Young had a sickle cell crisis on September 9, 2007. (Tr. 754). He met with his primary care physician, Dr. Tejash Patel, who reported the disease to be stable overall and that Young was "doing well" until March 12, 2009, on which day Dr. Patel reported that Young had experienced another sickle cell crisis three days earlier for which he received treatment at St. Luke's Hospital. (Tr. 729). On January 29, 2010, during a routine check up, Dr. Patel stated that Young gets one or two crises a year but is feeling excellent. (Tr. 713). Subsequently, Young experienced another sickle cell crisis on June 29, 2013 during which his symptoms included chest and lower back pain. (Tr. 318). He was treated at St. Luke's Sugar Land for a pulmonary embolism, sickle cell crisis, and deep vein thrombosis. (Tr. 822). Upon this sickle cell crisis, Dr. Ifitkhar Sarwar from Kelsey-Seybold Clinic diagnosed Young with sickle cell disease, enlarged prostate, iron overload, elevated blood sugar, hearing loss, senile cataract, and glaucoma suspect in his routine exam. (Tr. 388). Young was treated for another sickle cell crisis at Memorial Hermann Hospital on July 3, 2014. (Tr. 507).

On December 20, 2013, Young was treated by St. Luke's Hospital for a pulmonary embolism and deep vein thrombosis ("DVT") in his right leg, after which Dr. Sarwar noted that he still has some swelling, but was improving. (Tr. 406). Shortly thereafter, Young was seen at the Memorial Hermann Hospital Emergency Room for treatment of residual thrombus in his right calf as consistent with deep venous thrombus. (Tr. 421, 430). Following this visit, Young met with Dr. Kamal Khalil of UT Physicians, who assessed him with chronic venous thrombosis of the deep vessels of the distal lower extremity, pulmonary embolism, sickle cell crisis, and

sickle cell disease. (Tr. 569). Dr. Khalil recommended that Young continue taking Coumadin and use long term Jobst Stockings. (Tr. 569).

As for his vertigo and dizziness, Young reported loss of balance that lasted several years and progressively worsened, especially in crowds and while turning over, and the associated symptoms of hearing loss, inability to drive, and fear of hurting someone. (Tr. 608). During a consultation with Dr. Garfield Johnson, Young was assessed with vertigo, dizziness, and sensorineural, bilateral hearing loss. (Tr. 609). Dr. Johnson suggested a hearing aid consult for Young's hearing loss. (Tr. 609). In a follow-up brain MRI at Memorial Hermann Hospital on March 12, 2014, it was determined that Young had mild chronic small vessel white matter with ischemic changes and minimal atrophy in an otherwise normal MRI of the brain. (Tr. 468). Subsequently, Young was examined by Dr. Joseph Chang at Texas ENT on July 8, 2014. (Tr. 596, 624). Dr. Chang confirmed prior diagnoses of dizziness and vertigo, while suggesting vestibular physical therapy as well as medication along with use of a cane. (Tr. 598). In a follow-up appointment, Dr. Chang observed that Young responded adequately to the prescribed vertigo medication, magnesium oxide, and the vestibular physical therapy, targeted to improve Young's dizziness, vertigo, and imbalance. (Tr. 634). Thereafter, Dr. Rony Ninan assessed mixed headaches, depression, anxiety, vertigo and imbalance. (Tr. 541). Furthermore, Dr. Ninan conducted a tandem gait test that showed abnormalities and limping on the right but with a normal gait and station. (Tr. 541). Of significant importance, Dr. Ninan opined that Young's symptoms may be rebound headaches cause by medication overuse of Tylenol and hydrocodone. (Tr. 541).

Young was seen at the Berkeley Eye Center on March 9, 2012, March 22, 2013, and January 21, 2014. (Tr. 434-436, 437, 446). During the first visit, Young stated visual acuity at a

distance was good but he had a little difficulty reading. On March 22, 2013, Young met with Dr. David Garza for a routine eye exam. During the examination, Dr. Garza found that Young's visual acuity was stable and that he had no complaints. In 2014, Dr. Caplan's impression upon examination included hyperopia, cataracts, nuclear sclerosis, and cortical senile cataracts. (Tr. 436). At this time, Young stated that he had not driven in a month, had intense blurry vision every day, and was given information about cataract surgery. (Tr. 434-436). He decided to wait to have surgery until he could get on his wife's insurance and had recovered from a pulmonary embolism. (Tr. 436). Later, Dr. Nancy Webb from Kelsey-Seybold Clinic diagnosed Young with senile cataract and suspect glaucoma after being referred for a cataract evaluation. (Tr. 300). Young transferred to the Houston Eye Associates in February of 2014 and was initially examined by Dr. John Goosey, who suggested a corneal evaluation by Dr. Mark Vital. Dr. Vital's impression of the exam was corneal scars in both eyes that were stable, peripheral corneal opacity, combined forms of age-related cataracts in both eyes, stable pre-glaucoma in both eyes, and a history of refractive surgery. At this time, Dr. Vital suggested corneal surgery. (Tr. 857). Later in July of 2015, in a Vision Impairment Residual Functional Capacity Questionnaire, Dr. Vital reported that Young had scarring and irregular astigmatism from a previous radial keratotomy surgery, whose symptoms included blurry vision in both eyes that limited the ability to read and drive. (Tr. 804-809). At this point, Dr. Vital stated that he expects Young to have difficulty reading, working with small objects, and driving or operating machinery until he is able to be fitted for contacts in August 2015 for the right eye and January 2016 for the left eye. (Tr. 804-806). Dr. Goosey also completed a Vision Impairment Residual Functional Capacity Questionnaire in which he stated that Young's visual fields were full but that vision in both eyes may be blurry causing his daily activities to be affected. (Tr. 517-518). Young underwent

Lamellar Keratoplasty ("LKP") surgery on February 18, 2015 in his right eye and July 8, 2015 in his left eye. (Tr. 865, 849). Dr. Goosey noted that Young had corneal scarring in his operative notes after the first surgery, and that he felt blurry, sore, and photophobic in his eye after the second. (Tr. 866, 849). On May 6, 2016, Dr. Goosey observed that Young had discontinued the use of contacts due to intolerance and was experiencing severe irritation, hypersensitivity to light, redness, and foreign body sensation. (Tr. 901). Dr. Goosey also noted that Young's right corneal graft was trying to reject. (Tr. 903).

Having considered the objective medical evidence in the record, which reveals that Young has blurry vision that causes him to have difficulty reading and working with small objects, complications with corneal transplant surgery, dizziness, vertigo, and headaches, all of which impact Young's ability to perform daily functions, the objective medical evidence factor does not support the ALJ's decision in the RFC determination. In particular, despite the objective evidence in the record about Young's vision problems, no provision for such was made by the ALJ in the RFC determination.

### B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinion of treating and examining physicians on questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to the medical opinion, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the

10

nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez*, 64 F.3d at 176). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.* Furthermore, medical opinions, especially conflicting ones, must be considered. *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017). In *Kneeland*, the Court ruled that an ALJ erred by rejecting an examining physician's opinion without explanation in the decision. *Id.* at 751. Because of this legal error, the ALJ's resulting RFC determination was not based on substantial evidence. *Id.* 20 C.F.R. § 404.1527(b) states: "In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." Additionally, 20 C.F.R. § 404.1520(b) provides: "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." An ALJ may not reject a medical opinion without an explanation." *Id.* at 760. Such an error raises questions regarding whether the ALJ properly considered and weighed the opinion of a treating or examining physician, directly affecting the RFC determination. *Id.* at 762.

Here, the issue is whether the ALJ erred in her RFC determination by rejecting Dr. Williams's opinion without explanation. Dr. Williams examined Young on multiple occasions ranging from February 14, 2014 to January 5, 2015. During these times, Dr. Williams conducted a physical examination, followed up with Young for his DVT and sickle cell disease, and referred Young to a neurologist. (Tr. 581-589). Dr. Williams also completed a Residual Functional Capacity Questionnaire regarding Young's impairments. (Tr. 512). For this reason,

11

Dr. Williams qualified as an examining physician for the claimant and his opinion should have been considered. Because the ALJ failed to consider Dr. Williams's opinion and did not provide an explanation for giving it no weight, the ALJ erred. That error renders the ALJ's RFC determination not supported by substantial evidence. The ALJ found that Young had an RFC to perform light work, "except he cannot work in environments with more than moderate noise levels" and "around hazards such as unprotected heights, open water or flame and/or moving/dangerous machinery." (Tr. 19-20). Young contends that the ALJ failed to consider the severe impairments that have precluded him from returning to work as supported by the medical opinions of Dr. John Goosey, Dr. Mark Vital, Dr. Rony Ninan, Dr. Joseph Chang, and Dr. Dwayne Williams and the testimony of vocational expert, Kassandra Humphress. (Document Number 11 at 6). Young argues that the ALJ did not consider all of the evidence in the record, and then proceeds to enumerate the evidence not mentioned by the ALJ, which he claims would have supported finding of disability. Therefore, Young argues that the ALJ's decision is not supported by substantial evidence. For this reason, this factor does not weigh in favor of the ALJ's decision.

    **C.**    **Subjective Evidence of Pain**

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to

cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

At the administrative hearing held on September 17, 2015, Young testified that he has not worked since January 2014 when he left his job as a database administrator due to feeling unsafe and being unable to fulfill his duties. (Tr. 39-40). He explained that he experiences continuous migraine headaches especially while looking at computer screens at least three times a week for the past five or six years. (Tr. 43-45). As a result, he takes medication, such as Advil or Aleve, to help ease the pain and testified that he has to lay down in a dark, quiet area. (Tr. 44). Young stated that these headaches seriously affect his ability to work and his overall performance. (Tr. 45).

Young also testified that he has keratoconus and that his vision is blurry in both eyes, preventing him from being able to see fine objects. (Tr. 46). He testified that he tries to make sure that there are no hazards around his home that may cause serious injuries to occur. (Tr. 47). Furthermore, Young stated that he has dizziness, which creates a sensation of a spinning room even when he is sitting or walking. This prevents him from walking on uneven surfaces and has

caused partial hearing loss. (Tr. 47). Young claims that the dizziness and vertigo have occurred for four years with increasing severity. (Tr. 48). He uses a cane to help him with his balance. (Tr. 49).

In regards to his sickle cell disease, Young testified that he is in no shape to do anything during the crisis but outside of a crisis, it feels like a "bad case of arthritis." (Tr. 50). He claimed that a typical crisis lasts for four days, during which he is not able to do any functional activity. (Tr. 52). In regards to his back pain, Young stated that it is constant and occurs even when he is lying down. (Tr. 54). He testified that he could walk a block at a time but then must sit and rest for about five to ten minutes. (Tr. 54). He needs a railing to utilize the stairs and cannot walk on uneven surfaces without staggering. (Tr. 55). When taking public transportation, Young claims that he is not able to use the Metro because the new route is half a block further and he does not have a place where he may sit down to wait for the bus. (Tr. 55). Young further testified that he can sit for half an hour without getting up, stand for fifteen minutes without sitting down, lift no more than ten pounds, and has not driven for a year and a half prior to the hearing. (Tr. 55-56).

The ALJ discounted Young's subjective complaints as not fully credible. In so doing, the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 21). Credibility determinations, such as that made by the ALJ in this case, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay

witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Because the record shows that the ALJ made and supported his credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor weighs in favor of the ALJ's decision.

### D. Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

The record reflects that Young was 62 years old at the time of the administrative hearing, had completed three years of college, and had 38 years of past work experience as a database administrator. (Tr. 36-37). Based on the ALJ's conclusion that Young had the residual functional capacity to perform light work at the skilled level, the ALJ questioned a vocational expert, Kassandra Humphress, to determine whether Young could perform any of his past work.

> Q: I want you to assume an individual the same age as the Claimant with the same education, work experience, who has the residual capacity to perform light work, as defined in Social Security Administration Regulations, except he cannot work in an environment with more than moderate noise levels, as defined by Social Security Administration, as defined by the Dictionary of Occupational Titles. He cannot work around hazards, such as unprotected heights, open water or flame, and/or moving, dangerous machinery. Could such a person do the Claimant's past relevant work?
>
> A: Yes.
>
> Q: If I limited him to sedentary, with the same nonexertional limitations, could that person also do the Claimant's past, relevant work?

15

A: Yes.

Q: Now, take the second hypothetical person and I want you to add that they are additionally limited by severe pain and other symptoms that cause periodic loss of concentration and attention to tasks, difficulties meeting attendance standards, and would compromise his ability to perform work on a regular and continuing basis, as defined by the Social Security Administration Regulations. Any jobs?

A: No jobs, Judge.

(Tr. 58-59).

The record lacks substantial evidence to support the ALJ's determination that Young can perform light work at the skilled, sedentary level. This final factor, which is based on the vocational expert's application of the ALJ's unsupported RFC, does not weigh in favor of the ALJ's decision.

## VI. Conclusion and Recommendation

Considering the record as a whole, the Court is of the opinion that the ALJ's decision is not supported by substantial evidence. Therefore, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 11) is GRANTED, Defendant's Motion Cross-Motion for Summary Judgment (Document No. 12) is DENIED, and the Commissioner's decision is REMANDED to the Social Security Administration pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

Signed at Houston, Texas, this 21st day of July, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE